## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

*Plaintiff(s):*

ANDREA L. SPOLTORE,
f/k/a/ ANDREA L. CADWALLADER

*vs*.

*Defendants:*

WILMINGTON PROFESSIONAL
ASSOCIATES, INC., a business entity

Hon. Joseph J. Farnan, Jr.,
U.S.D.J.

Civil Action No. CA-04-125

**OPPOSITION ON BEHALF OF PLAINTIFF TO MOTION TO COMPEL AND IN SUPPORT OF CROSS-MOTION FOR A PROTECTIVE ORDER**

      Plaintiff, Andrea Spoltore, by way of opposition to Motion to Compel filed by defendant and in support of Cross-Motion for a protective order hereby says:

      1.    Defendant Wilmington Professional Associates (hereinafter "WPA") has filed the fourth motion that involves its request for discovery of mental health issues that arose in June, 2004, two years after the plaintiff was terminated from her employment at defendant WPA. Neil S. Kaye, M.D, a board certified psychiatrist, has examined the plaintiff and found (a) that Ms. Spoltore had a clear medical and psychiatric effect as a direct result of her termination at WPA, that began at the time she was terminated on March 6, 2002 and that ended by May 9, 2002, after she was able to resume employment (*See* Defendant's Second Motion to Compel, (hereinafter "DM"), Exhibit A, page 12 L. 5 to 13 L. 19; page 14 L. 3 to 17 L. 11); and (b) that other mental health issues that arose in or about June 2004, were unrelated to the Plaintiff's termination of employment on March 6, 2002, and those unrelated mental health issues are not the subject of any of the testimony he will be offering at trial. (DM, Exhibit A at 43 L. 2-9; page 16 L. 11 to 17 L. 3). Given that the three prior motions address the same issues as those presented in the within motion, Plaintiff hereby incorporates by reference, (a) Plaintiff's Motion to Quash Subpoenas

605795

served by defendant WPA on Delaware Medical Management Services, LLC (filed September 16, 2004); and (b) Plaintiff's opposition to WPA's Motion to Compel and Cross-Motion for a Protective Order, (filed December 21, 2004).

2.   WPA's motion contains incorrect and misleading assertions. One misleading assertion is that Drs. Jackovic and Dr. Kaye both based the opinions they provided, on the events that took place in June, 2004, when they formulated opinions concerning the emotional distress that the plaintiff suffered two years earlier, when her employment was terminated, on March 6, 2002. DM at 5.  To the contrary, both medical experts have testified that the plaintiff suffered from two distinct mental injuries: one that occurred between March 6, 2002 to August, 2002 that was limited in duration, diagnosed by Dr. Kaye as adjustment disorder with mixed anxiety and depression, in the DSM-IV 309 series, that was caused by the termination of her employment; and another that arose two years later, that was not caused by the termination of employment. DM, Exhibit A, page 18 L. 11-15; page 15 L. 17 to 16 L. 3; Exhibit B, page 22 L. 11-15.  Dr. Kaye further testified that after the plaintiff became employed, on May 9, 2002, she still experienced feelings of shame, humiliation, and loss of confidence related to how she was terminated and her inability to get a new job with similar wages and benefits, but those symptoms had decreased in intensity such that they no longer formed the basis of a psychiatric disorder after May 9, 2002. DM, Exhibit A at 14 L.  Thus, there is no assertion here of an ongoing severe emotional harm, that would place her present mental condition in controversy. *See*, <u>O'Quinn v. New York Univ. Medical Center,</u> <u>163 F.R.D. 226, 228 (S.D.N.Y., 1995)</u> (holding that because the plaintiff in a sex discrimination case was not pursuing claims for *ongoing severe* emotional harm, she did not place her mental condition in controversy).

3.      Nor did Dr. Kaye or Dr. Jackovic base their opinions as to the diagnosis and treatment of the plaintiff from March 6, 2002 to August, 2002, on the events that took place two years later, after June 2004. Therefore, since neither doctor is expected to testify at trial as to the events that arose in June, 2004, the cases relied on by WPA, including <u>Lowe v. Philadelphia Newpapers, Inc</u>., 101 F.R.D. 296, 298(E.D.Pa 1983), are distinguishable and not controlling. Thus, the private medical information that arose in June, 2004, is not relevant to this action and is privileged. Therefore, Plaintiff has presented WPA with a privilege log concerning the documents that are privileged from production and it is respectfully requested that those documents not be disclosed to WPA. *See* letter dated January 18, 2005, attached as Exhibit A.

4.      WPA bases its motion on the erroneous assertions that it needs to determine whether "the alleged suffering was simply the product of pre-existing conditions or other issues causing stress in her life" and that "Dr. Kaye repeatedly refused to answer questions, (or was directed by Plaintiff's attorney not to answer questions) about the plaintiff with respect to her mental or emotional condition both before and after that two month period [in which Dr. Kay will testify that the plaintiff suffered 'an adjustment disorder with mixed anxiety and depression']". DM at 2. WPA obviously disregards the deposition testimony of Dr. Kaye in which he answered questions concerning the plaintiff's mental condition **prior** to her termination by WPA on March 6, 2002:

> Q.   Did she tell you anything about having previously been treated for depression or anxiety?
>
> A.   Yes she did.
>
> Q.   Okay. What did she tell you?

> A. She told me that she had been treated in the past. Her husband had cancer and during the time that he was dying, she was depressed and anxious, probably. And she was stated on medications for that, and she took those until sometime after her husband died, and by somewhere in, if my memory is right, 1998, I believe. Yeah, by April of 1998, she was off those completely and not taking regular medications. (DM, Exhibit A, page 25 L. 8-20.)

\*       \*       \*

> Q. But what I'm trying to figure out is whether she received treatment for either depression or anxiety prior to March 5th or March 6, 2002, other than in connection with the passing of her husband?
>
> A. Not that I recall. (DM, Exhibit A, Page 27, L. 14-18.)

\*       \*       \*

> Q. Regardless of how you learned it, Dr. Kaye, are you aware of any diagnosis that has been given to Ms. Spoltore with respect to depression or anxiety for the period prior to March 6, 2002, that was not in connection with the passing of her husband.
>
> A. Not that I recall. I don't remember anything, so no. (DM, Exhibit A, page 12-19.)

3.  WPA also presents an erroneous portrayal of Dr. Jackovic's deposition testimony. Dr. Jackovic testified fully as to the plaintiff's medical and social history **prior** to the time her employment was terminated by WPA on March 6, 2002, and about the stressors in the plaintiff's life while she was treating the plaintiff for situational anxiety/depression. DM, Exhibit B at 40 L.10 to 43 L. 17; page 32 L. 23 to 39 L. 5.

4.  Dr. Jackovic testified that she examined the plaintiff shortly after her employment was terminated by WPA on March 6, 2002 and she treated the plaintiff for emotional distress from March 20, 2002 to August 8, 2002, which was diagnosed as situational anxiety/depression. DM, Exhibit B at 22 L. 11-24. Dr. Jackovic testified that beginning March 20, 2002, she

prescribed two medications for the emotional distress she suffered from as a result of the termination of employment, Xanax and Zoloft. Exhibit B at 26 L. 20 to 27 L. 1; page 29 L. 2-10. On April 19, 2002, Dr. Jackovic stopped the Zoloft and although she also prescribed Xanax at that time, it was prescribed, on an "as needed" basis, which was last filled by the plaintiff after that office visit, on April 19, 2002. DM, Exhibit B, page 27 L. 9 to 11; page 29 L. 2-6.

5.      Dr. Jackovic also prescribed Paxil on April 19, 2002, after Dr. Jackovic found that the plaintiff was "still having quite a bit of anxiety" and, she diagnosed her as also suffering from social anxiety disorder. DM, Exhibit B, page 27 L. 9 to 11; page 37 L. 21-38 L. 2. Dr. Jackovic was of the opinion that the social anxiety disorder was a chronic, preexisting condition, that was not caused by the termination of employment. DM, Exhibit B, page 27 L. 9 to 11. However, Dr. Jackovic was of the opinion that the social anxiety disorder was exacerbated by the plaintiff's termination of employment by WPA, which was when the problems of that condition came to light, as a result of the plaintiff being required to speak in front of people during job interviews. DM, Exhibit B at 27 L. 2-12. However, Dr. Jackovic found that by August 8, 2002, the plaintiff had gained new employment, and by that time, the situational anxiety/depression appeared to be stable on the medication. DM, Exhibit B at 24.

6.      Dr. Jackovic testified that two years later, on July 27, 2004, the plaintiff reported to her that she was under the treatment of another physician for emotional distress, and that other physician had changed her medication. DM, Exhibit B, 29 L. 7 to 32 L. 16. Dr. Jackovic did not answer questions relating to the other physician's treatment and management of the plaintiff for emotional distress after July 27, 2004, based on plaintiff's claims of privilege. DM, Exhibit B at page 29 L. 11 to 30 L. to 32 L. 16.

7. Dr. Jackovic also testified to the preexisting medical and social conditions that the plaintiff suffered from at the time that WPA terminated the employment of the plaintiff on March 6, 2002. DM, Exhibit B at 40 L.10 to 43 L. 17. Dr. Jackovic also testified fully as to the other stressors in the plaintiff's life at the time that Dr. Jackovic diagnosed the plaintiff as suffering from situational anxiety/depression during her office visit of March 20, 2002, that arose from her termination of employment. DM, Exhibit B, at 32 dL. 23 to 39 L. 12. The only information that Dr. Jackovic did not provide were other doctors' management of the plaintiff approximately two years after Dr. Jackovic testified that she had stopped treating the plaintiff for the emotional distress that arose as a result of the termination from her employment. DM, Exhibit B at page 29 L. 11 to 30 L. to 32 L. 16. Thus, there is no basis to WPA's contention that Dr. Jackovic was not allowed to explain her report or to address the other stressors in the plaintiff's life at the time of her termination. DM, Exhibit 5.

8. The discovery that WPA requests concerning an unrelated medical condition that occurred two year after the date the plaintiff's employment was terminated, is not relevant to the claims asserted in this case, and are protected from disclosure by Fed. R. Ev. 503, and plaintiff's constitutionally protected privacy interests. *See*, Wank v. Central Motor Lines, 1981 WL 377625 (Del. Supr. 1981) aff'd, 483 A.2d 633, 1984 WL 10692 (Del. Sup. 1984)(Privilege established by Rule 503 applies to communications with a doctor that are plainly not relevant to the claim), *See* also, Gatewood v. Stone Container Corporation, 170 F.R.D. 455, 460 (S.D. Ia. 1996), (a person's medical and mental health history involve private, personal information which ought not to be disclosed on the basis of attenuated relevance). Id. at 460 (emphasis added).

9. Although WPA was provided with discovery relating to the plaintiff's past medical history as well as the events that occurred from March to August, 2002, and the stressors that existed in the plaintiff's life at that time, it has not presented any facts to support its contention that the mental distress that arose two years after the termination, were caused by the termination. WPA Motion at 6. In fact, it is obvious that WPA is not seeking the subsequently occurring mental health issues to attempt to create a causal link between the termination of employment in March 6, 2002 and those conditions, as it contends, since such a finding would obviously increase the damages that the plaintiff would suffer. Rather, WPA obviously seeks to intrude into the subsequently occurring condition solely to harass and oppress the plaintiff and in an attempt to embarrass her. As in <u>Gatewood v. Stone Container Corporation</u>, a protective order should be entered, pursuant to <u>Fed.R.Civ.P. 26(c),</u> that bars WPA from obtaining discovery relating to medical distress that arose more than two years after the Plaintiff's employment at WPA had been terminated, and that are not the subject of any claims asserted by Plaintiff in this case.

10. WHEREFORE, Plaintiff respectfully asks that (a) its motion for a Protective Order be Granted; and that (b) WPA's Second Motion to Compel be denied.

Respectfully submitted,

By: */s/ Steven T. Davis*
 STEVEN T. DAVIS, ESQUIRE (#2731)
**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
3 Mill Road, Suite 306A
Wilmington, DE  19806
 (302) 655-9094

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
KIMBERLY D. SUTTON, ESQUIRE
Admitted Pro Hac Vice
20 Brace Road, Suite 300
Cherry Hill, New Jersey 08034
(856) 795-3300
Attorneys for Plaintiff Andrea Spoltore

DATED:  March 15, 2004