IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANDREA L. SPOLTORE,           )
f/k/a ANDREA L.               )
CADWALLADER,                  )    C.A. No. 04-125-JJF
                              )
        Plaintiff,            )
                              )
v.                            )
                              )
WILMINGTON PROFESSIONAL       )
ASSOCIATES, INC.,             )
                              )
        Defendant.            )

COPY

                Thursday, April 7, 2005
                10:17 a.m.
                Courtroom 6C


                844 King Street
                Wilmington, Delaware



BEFORE:   THE HONORABLE MARY PAT THYNGE
          United States District Court Magistrate


APPEARANCES:

                KIMBERLY D. SUTTON, ESQ.
                OBERMAYER, REBMANN
                MAXWELL & HIPPEL, LLP
                  20 Brace Road, Suite 300
                  Cherry Hill, New Jersey 08034
                  Counsel for the Plaintiff


                LAURENCE CRONIN, ESQ.
                SMITH, KATZENSTEIN & FURLOW, LLP
                  800 Delaware Avenue, 7th Floor
                  Wilmington, Delaware  19899
                  Counsel for the Defendant

```
1                  THE CLERK:  All rise.

2                  Please be seated.

3                  THE COURT:  We are here today to

4    address a number of matters which I understand is

5    five motions in general to be considered.  I have

6    reviewed all of the submissions made by both

7    sides.

8                  Plaintiff's motion to quash

9    subpoenas, which is found at Docket Entry Number

10   29.  Defendant's motion to compel, which is found

11   at Docket Entry Number 56.

12                 Plaintiff's motion for a protective

13   order in response to Docket Entry Number 56,

14   which is -- which is plaintiff's motion for

15   protective order is Docket Entry Number 58.  And

16   defendant's motion in response to plaintiff's

17   motion for a protective order, which is found at

18   Docket Entry Number 59.

19                 And then defendant's second motion

20   to compel, which was filed most recently on March

21   8th, 2005, which is found at Docket Entry Number

22   79.

23                 I have quite a bit of information

24   from both of you, and I'm not certain exactly how
```

1    much argument you feel that you're going to need.

2    I apologize for starting this process today a

3    little late, unfortunately the judges meeting

4    went a little bit longer than what I expected.

5              I really don't want the parties to

6    regurgitate in dramatic form what has been said

7    to me previously, because I can read just as well

8    as anyone else.  And I think that you've

9    expressed your thoughts quite adequately.

10             However, I do want to -- and I know

11   that we had a telephone call a little while back

12   to cancel the mediation on the schedule for today

13   and convert it into a discovery hearing that was,

14   or discussion about the outstanding discovery and

15   the discovery issues.

16             What I want to do, though, because I

17   can't remember all the ins and outs of that

18   telephone call, what was agreed to or what the

19   parties understand or counsel understands that

20   they have agreed to so far that are directly

21   related to the issues that are contained in these

22   five motions.

23             MS. SUTTON:  Your Honor --

24             THE COURT:  Could you just introduce

 1    yourself to me?

 2                    MS. SUTTON:  Yes.  I was going to do

 3    that.

 4                    I'm Kimberly Sutton.  I am an

 5    attorney from Obermayer, Rebmann, Maxwell &

 6    Hippel.

 7                    THE COURT:  Kimberly, you are going

 8    to have to -- you can stay there, which is fine.

 9    You don't have to stand up to talk.  You can sit

10    down, pull as far as you can the microphone

11    towards you, but try to project.

12                    Unfortunately, you are now competing

13    with some form of air being pumped into this

14    room.  I know it's not cold air.  It could very

15    well be hot air.

16                    If it is, we will -- off the record.

17                    (Following a discussion held off the

18    record:)

19                    THE COURT:  On the record.

20                    MS. SUTTON:  Your Honor, thank you.

21    We represent the plaintiff, Andrea Spoltore,

22    who's with me, too.

23                    Just for the record, I understand

24    that our local counsel, Mr. Davis, also of my

1    firm called and was excused from these hearings

2    this morning.

3              THE COURT:  Yes, he was.

4              MS. SUTTON:  He is available if

5    necessary.

6              The motion to quash, I would say

7    that most of that motion is now moot.  Since that

8    motion was filed, there have been changes with

9    Ms. Spoltore's employment.  I authorized DMMS to

10   release the documents with the exception of

11   documents that they may have that relate to the

12   medical records that are the subject of the later

13   motions.

14             With respect to the motion to quash,

15   we did provide to Mr. Cronin, the document, the

16   medical records from Dr. Jackovic.  There were

17   some documents that we did redact, certain

18   information that we're claiming is not relevant.

19             And there were some entire reports

20   that we did not disclose to him.  We gave him a

21   privileged log.

22             I understand that since the last

23   subpoena was filed, there may be some additional

24   medical records that he has not yet --

1  Dr. Jackovic may have that have not been

2  produced.

3              And we're claiming that those

4  documents, to the extent that they relate to the

5  medical condition that we claim is privileged,

6  that we're seeking that she not disclose those

7  records as well.

8              So with respect to all the motions

9  that we have, it seems like the only real

10  issue -- oh, there is.  He moved just recently

11  before the Department of Labor to get Ms.

12  Spoltore's unemployment claims with the New

13  Jersey Department of Labor.  We have no objection

14  to that, except to the extent that they had

15  confidential medical records that relate to the

16  newly -- the new condition that we're claiming is

17  confidential.

18              Other than that, it seems like

19  there's only one real issue before the Court,

20  which is whether the medical condition that arose

21  two years after her employment is protected from

22  disclosure under the HIPAA laws.  And

23  particularly we're claiming it has no relevance

24  to this litigation.

1          Ms. Spoltore was terminated from her

2     employment in March 2002.  She had a short period

3     where she was diagnosed with situational anxiety,

4     depression.

5          They claimed it was related to the

6     termination.  She was seen by a psychiatrist who

7     evaluated her and said that it was a limited

8     period where she had the psychiatric condition.

9          Once she was re-employed, her

10    symptoms decreased to the point where she no

11    longer had that psychiatric disorder.  And rather

12    what she was suffering was a general garden

13    variety type of emotional distress thereafter.

14          THE COURT:  What records were

15    provided to the expert, Dr. Bunin?

16          Bunin is B-U-N-I-N.

17          MS. SUTTON:  Well, Bunin is our

18    economist.

19          THE COURT:  I understand that.

20          MS. SUTTON:  He just got tax

21    returns, employment documents, plans, history of

22    her benefits that she received, work vacation

23    time, sick time that she took with DMMS, things

24    of that nature.  We have -- with respect to DMMS,

```
 1   all those documents have been released.

 2                THE COURT:  So he had an opportunity

 3   to see all the documents from DMMS?

 4                MS. SUTTON:  Not at that time.

 5   After we -- he saw the documents, primarily the

 6   plans that we had agreed to give him.

 7                THE COURT:  I understand that,

 8   but --

 9                MS. SUTTON:  For his first report --

10   see, there's two reports for -- the initial

11   report, that was the only report.

12                At the time that we submitted this,

13   I believe she had -- he had her -- she had just

14   recently been employed, so just the recent --

15   just the general plans and things of that nature,

16   and he primarily had the defendant's documents

17   with respect to the benefits, and salary, and

18   things like that.

19                We -- just after Ms. Spoltore lost

20   her employment in December, just recently, we

21   provided him with additional information relating

22   to her time lost at DMMS, vacation time, sick

23   time, things of that nature, but no medical

24   records and things of that nature.
```

1      THE COURT:  Well, was he provided

2    with any reports, for example, from your other

3    experts?

4      MS. SUTTON:  Oh, I have his report

5    here.  I don't believe at that point in time that

6    he did his first report or even at the second

7    that we had any expert reports at that point in

8    time. So I'm sure he didn't get them.

9      It's our position, Your Honor, that

10   this newly -- what we've done is we've allowed --

11     THE COURT:  Well, let me understand.

12     MS. SUTTON:  Okay.

13     THE COURT:  Let me correct you right

14   now.

15     MS. SUTTON:  Sure.

16     THE COURT:  What you have concluded

17   to be a newly -- a new condition, what you keep

18   saying to me your client feels is a new

19   condition, what you indicated to me that I think

20   Dr. Kaye and Dr. Jac -- I can't remember, Dr. --

21     MS. SUTTON:  Jackovic.

22     THE COURT:  Jackovic, thank you,

23   considered to be new conditions have said that

24   what happened in 2000 -- the July 2004 time frame

1   were prior to that time are to be "new

2   conditions".  That's fine.

3            But I'm not necessarily agreeing

4   that the defendant has to rely entirely upon your

5   representation, your client's representation and

6   your expert's representations in that regard.

7            MS. SUTTON:  Well, Your Honor,

8   here's the position that we have is that we have

9   allowed them to explore everything about

10  Ms. Spoltore's medical history during the medical

11  relevant time period and a year after.  They were

12  able to explore her past work history to find out

13  what her emotional state was before her

14  termination.

15           We let them explore everything

16  around the time of the termination.  And we gave

17  medical records for the next two years.

18           So if there was something that they

19  could relate to the termination during that time

20  period, I mean, if something existed, they would

21  have it.  Now, this is something that occurred

22  two years after the termination.

23           THE COURT:  But we don't have the --

24  what I don't have and what concerned me when I

1   read Dr. Kaye's report that was attached -- first

2   of all, I think the report was inadequate,

3   inadequate and inconsistent with Rule 26 for what

4   it provided, because it was conclusory

5   statements, but it also indicates that Dr. Kaye

6   saw certain records, that her family doctor saw

7   certain records.

8              And, unfortunately, you have never

9   addressed in any of your arguments what Rule

10  26(a)2(b) requires on the experts, and the

11  Advisory Committee notes for that particular

12  section, particularly the 1993 changes.

13             The whole purpose of when the rules

14  changed in 1993 was to eliminate, quite frankly,

15  the need of taking depositions.  What I don't

16  have and when I read through all the information

17  was why Dr. Kaye came to this conclusion, why the

18  physicians or family physicians who have been

19  treating her, Dr. Jackovic came to these

20  conclusions.

21             Because why something that was

22  happening in 2004 was either not related to the

23  time frame of her difficulties of her -- of her

24  loss of her employment with the defendant or

1   something that may have been preexisting before

2   then, because those questions couldn't be

3   answered.

4           Because once they were, that would

5   have been disclosed what had been happening or

6   what had occurred.

7           MS. SUTTON:  Well, Your Honor,

8   here's my response:  Dr. Kaye is not going to

9   testify about the new condition.  He's not going

10  to.

11          THE COURT:  I don't care.  I don't

12  care.

13          He reviewed records to come to a

14  conclusion that it wasn't related.  And I'm

15  sorry, I think under Rule 26(a), you are --

16  you're stuck.

17          I think it can be discovered.  I

18  think it can be explored.  It doesn't mean it's

19  admissible at all.

20          And certainly, I understand your

21  concerns about whether or not a protective order

22  should be issued in this matter.  Generally, in

23  this Court, at least my practice is to have a

24  standard protective order in my scheduling.  Not

1     all judges do that.

2                 But certainly, I understand the

3     concerns that you have raised regarding that.

4     But you have never answered -- you've never

5     answered Rule 26.  You've never answered under

6     Rule 26(a).

7                 MS. SUTTON:  It's my understanding

8     when you look at Rule 26, it's the information

9     that he is going to rely on that he relied on --

10                THE COURT:  No.

11                MS. SUTTON:  -- to express his

12    opinions.

13                THE COURT:  No.  You better read --

14    you better read the Advisory Committee notes.

15                Would you please -- 2004 Advisory

16    Committee notes provide as follows -- let me find

17    the ones that are in the last group here.

18                First of all, the report requires

19    that a person has been retained to -- information

20    disclosed must be prepared, detailed and complete

21    written reports stating the testimony of the

22    witness expected to present during direct

23    examination, together with the reasons,

24    therefore.

1          It also provides the report, which

2    is intended to set forth the substance of direct

3    examination should be written in a written report

4    to reflect the testimony to be given by the

5    witness and must be signed by the witness.  The

6    report is to disclose the date and other

7    information considered by the expert and any

8    exhibits or charts that summarize or support the

9    expert's opinion.

10         Given this obligation of disclosure,

11   litigants should no longer be able to argue that

12   materials furnished to their experts to be used

13   in forming their opinions, whether or not

14   ultimately relied upon by the expert, are

15   privileged or otherwise protected from disclosure

16   when such persons are testifying or being

17   deposed.

18         Although the revised submission

19   subdivision (b) authorizes deposition of expert

20   witnesses, since deposition of experts required

21   to -- since depositions of experts required to

22   prepare a written report may be taken only after

23   the report has been served, the length of the

24   deposition of such expert should be reduced.  And

```
 1   in many cases, the report may eliminate the need

 2   for a deposition.

 3              What this rule provides and what

 4   ends up happening is anything that has been given

 5   to an expert that they reviewed, whether or not

 6   they relied upon it in forming their opinion is

 7   something that is discoverable.  That's not my

 8   conclusion.

 9              Quite frankly, that's been the

10   conclusion by this Court in a number of

11   instances.

12              MS. SUTTON:  Well, Your Honor, I

13   mean what -- it's -- my understanding is the

14   direct testimony that Dr. Kaye is going to give,

15   he's going to express no opinion whatsoever on

16   the stand about this condition.

17              THE COURT:  That may be so, but he

18   read through materials that came to a conclusion

19   to make the determination that the present

20   condition in 2004 was not related to incidents or

21   were not related to incidents around the time of

22   her firing, around the time of her discharge from

23   WPA.

24              He had to read stuff to come to that
```

1    conclusion. And I'm sorry, once that occurred,

2    and once that information was disclosed to him,

3    it is discoverable, and the defendant has a right

4    to find that out.

5              You will not win on an argument with

6    me on relevance, because under the rules,

7    discovery rules, relevance is pretty broad.

8    Admissibility is another thing.

9              I'm not suggesting by anything I'm

10   saying here today that any of this stuff may be

11   admissible at trial. That's going to be up to

12   Judge Farnan to make that determination in light

13   of how this case pans out and in light of what

14   happens with discovery.

15             But Dr. Kaye looked at something,

16   prepared a report, came to the conclusion that

17   they weren't related. Yet, the defendant was

18   never asked and never allowed to be able to ask

19   him the reason why that wasn't the case, was

20   never able really to ask Dr. Jackovic why she

21   came to that conclusion, why her determination

22   was made in that regard.

23             And more importantly, there's one

24   thing that's setting out there that I have some

1    problem with, and that is we know that medication

2    was prescribed to your client such as Zoloft and

3    Xanax.  And that Xanax was last filled -- the

4    prescription was last filled by your client,

5    according to the information I have, on

6    April 19th, 2002.

7              But Paxil was also prescribed on

8    that date, too.  And there's indications to

9    suggest that Dr. Jackovic changed the

10   prescription of Paxil from whatever it was before

11   Jackovic to CR 25 milligrams on January 7, 2003.

12             So there's a lot of open questions,

13   and I'm inclined, very much inclined to allow the

14   discovery to occur in this area, to have that

15   information exchanged.  I am not making a

16   determination that that information is going to

17   be admissible at trial.

18             But defendant has a right to explore

19   it, and they have a right to have its own experts

20   look at that stuff to make a determination as,

21   geeh, maybe something that's disclosed in 2004

22   shows that, geeh, the 2002 isn't related to the

23   discharge, related to her work discharge despite

24   what her own experts say.

```
 1              MS. SUTTON:  But it's speculative to

 2    even make that jump if, when you have already

 3    explored everything that took place around the

 4    termination, and don't find anything, that you

 5    can claim that two years later there's something.

 6              THE COURT:  I think that's kind of

 7    an assumption, isn't it, on your part?  I didn't

 8    hear that from defense counsel coming from them

 9    that they found nothing.  I think that is an

10    assumption on your part.

11              You're missing the point.  Both of

12    these physicians had access to -- both of these

13    physicians and both of these experts that you're

14    calling had access to certain records that they

15    had the ability to review.  I am not going to

16    jump into their mind and try to separate out

17    whether it had an influence or not.

18              And that's the reason why Rule

19    26(a)2 is written the way it is.  And that is the

20    reason why the Advisory Committee notes came down

21    the way they did.

22              There had to be something to review

23    that -- for Dr. Kaye and for Dr. Jackovic to come

24    to the conclusion that what happened in July of
```

```
 1    2004 was not related to what was happening in the

 2    March through August time frame in 2002.

 3              And the problem is defendant doesn't

 4    have that information to understand why they

 5    would have come to that conclusion, why they are

 6    saying it's a finite period of time, and he has a

 7    right, or defendant has a right to investigate

 8    whether your people are right.

 9              MS. SUTTON:  And if they find that

10    it's related, all that would do is give us more

11    damages.

12              THE COURT:  Then fine, that's their

13    problem.

14              MS. SUTTON:  Okay.

15              THE COURT:  However, if they find

16    it's related, they may also be saying it's not

17    only related to this, but it's also related to

18    whatever happened in 1997.

19              I don't think it's your right nor

20    defendant's right to tell each other what the

21    heck is relevant in a case necessarily.  I don't

22    think this is overreaching.

23              I don't think this is beyond what's

24    required.  But more importantly, I don't think
```

```
 1     that Rule 26 prevents it from being discovered by

 2     the defendant.

 3              As I emphasize again, I'm not saying

 4     it's admissible at trial at all.  And if it turns

 5     out, their expert, comes down that they're

 6     planning to use, comes down to a different

 7     conclusion and writes it in a report, then fine.

 8     You got some additional damages.

 9              But it's what is discoverable that

10     is a different standard.  And relevance is very

11     broad, and, in fact, was made significantly

12     broader as a result of the 1993 changes.

13              As a result again of the 2000

14     changes.  And I hate to tell you, there's going

15     to be 2005 changes that I'm very much aware to

16     broaden discovery even more, trying to keep the

17     Court out of having to discuss and deal with

18     discovery matters.

19              MS. SUTTON:  Well --

20              THE COURT:  My ruling today is that

21     when it comes to Dr. Kaye and Dr. Jackovic, that

22     what -- everything that Dr. Kaye reviewed,

23     everything that Dr. Jackovic reviewed, I

24     understand they're your two experts.
```

```
 1              MS. SUTTON:  Your Honor --

 2              THE COURT:  Dr. Hamming is not going

 3    to be testifying as an expert, is she?

 4              MS. SUTTON:  I haven't asked her.  I

 5    asked Dr. Jackovic.  They work together.

 6              THE COURT:  I understand that.  I

 7    didn't know if there had been a different time

 8    that Hamming may have been involved in her

 9    treatment or whatever.

10              I want to make sure, to the extent

11    that you've got Kaye and Jackovic right now

12    identified as experts, and they're going to be

13    called in that capacity, whether as a treating

14    physician, or treating psychiatrist, or whatever,

15    defendant is going to be allowed to have all the

16    records of Dr. Kaye reviewed, all the records

17    that Dr. Jackovic reviewed.

18              He's also going to be allowed to

19    continue with their depositions in this case and

20    ask them the why questions that they were not

21    allowed to ask previously.

22              Defendant will not be responsible

23    for paying those individuals for their time, for

24    their continued deposition.  But defendant's
```

```
 1    request for attorneys' fees and costs in filing

 2    its motion or responding to plaintiff's

 3    protective order request in this area is denied.

 4              I also find, now, concerning the

 5    records of the -- have the complete personnel

 6    files of DMMS been provided to defendant?

 7              MR. CRONIN:  No, Your Honor.

 8              MS. SUTTON:  The only thing that

 9    hadn't been produced from what I understand are a

10    few medical records.

11              THE COURT:  And those would have

12    been medical records that may or may not have

13    been reviewed by Dr. Kaye or Dr. Jackovic?

14              MS. SUTTON:  They were not from --

15              THE COURT:  By Dr. Jackovic --

16              MS. SUTTON:  They were not.

17              THE COURT:  Do you know if they were

18    reviewed by either one of them?

19              MS. SUTTON:  No.

20              THE COURT:  But they were made

21    available to the employer?

22              MS. SUTTON:  I think it's workers'

23    comp that has the doctor's note.  It's just

24    recent.
```

```
 1              THE COURT:  Well, workers' comp --

 2              MS. SUTTON:  I mean, not workers'

 3   comp, Your Honor.  It's unemployment.

 4   Unemployment compensation.

 5              THE COURT:  She provided information

 6   to obtain unemployment compensation.

 7              MS. SUTTON:  From DMMS, whether --

 8   the question was whether she was wrongfully

 9   terminated for cause.  So in order to prove her

10   case, she had to produce a doctor's report.

11              THE COURT:  Okay.  And she produced

12   that to the unemployment compensation hearing?

13              MS. SUTTON:  Agency.

14              THE COURT:  Here.

15              MS. SUTTON:  Correct.

16              It was a hearing.

17              THE COURT:  Was there any request at

18   that hearing to make sure that that information

19   would be confidential during that hearing?

20              MS. SUTTON:  It's -- it's right on

21   the front of the document.  There's a HIPAA

22   warning that it cannot be produced without her

23   consent.  And that's with respect to all of these

24   documents, Your Honor.
```

```
 1              THE COURT:  I understand that, but I

 2    also think that your -- what you're using HIPAA

 3    for is also improper.  That are -- Under

 4    45CFR164.512, it -- specifically subsection (b)

 5    for judicial and administrative proceedings.

 6              Because the attempt basically is

 7    to -- I am going to also order that that

 8    information will also be produced, because I do

 9    think that to the extent that there is an

10    unemployment compensation matter going on in

11    relation to this actually does relate to the

12    issue of damages.

13              Again, I do also feel that there

14    needs to be a protective order, qualified

15    protective order, either entered into between the

16    parties or entered by this Court, which I will

17    gladly enter in if the parties have an agreement

18    to do that and sign off on it.

19              And that is basically, I think, the

20    primary thrust of 45CFR 164.512 subsection (e).

21    Subsection (e) is -- I should say subsection

22    (e)(1)(b) is to make certain that the health

23    information that is disclosed, either in the

24    administrative tribunal, or in a Court
```

```
 1    proceeding, or in the litigation is only
 2    disclosed in that litigation.
 3              And I think that's what the intent
 4    is.  I don't think HIPAA was ever intended to
 5    prevent necessarily access to records,
 6    particularly when an individual has clearly put
 7    certain health, mental and emotional health
 8    matters in question and in issue in a case.
 9              But recognizing that there's HIPAA
10    out there, recognizing that 45CFR164.512 exists,
11    I certainly do think that having a qualified
12    protective order makes sense.  And my emphasis is
13    basically where that falls is to prevent it from
14    -- from either party using or disclosing the
15    protective health information from any purpose
16    other than the litigation or proceeding for which
17    information was requested.
18              In fact, if I go through the
19    subparts of (a), (b), subparts of subsection (e),
20    subsections (a), (b) -- (a) and (b), it certainly
21    indicates that it was never intended that HIPAA
22    was going to suddenly affect the federal rules of
23    discovery or affect how litigation would
24    necessarily proceed.
```