# OBERMAYER
## REBMANN MAXWELL & HIPPEL LLP
*Attorneys At Law*

**Kimberly D. Sutton, Esquire**
E-mail address kimberly.sutton@obermayer.com
Member of NJ and PA Bar

Suite 300
20 Brace Road
Cherry Hill, NJ 08034-2634
P 856-795-3300
F 856-795-8843
www.obermayer.com
File No. 41104-001

June 1, 2005

*Via UPS Next Day*

**SEALED CONFIDENTIAL DOCUMENT
NOT TO BE FILED OF RECORD**

The Honorable Mary Pat Thynge, U.S.M.J.
United States District Court
For the District of Delaware
844 N. King Street
Lock Box 8 – Room 4209
Wilmington, DE 19801

Re:  Andrea L. Spoltore, f/k/a Andrea L. Cadwallader v.
     Wilmington Professional Associates, Inc.
     Docket No.: 04-125 JJF

Dear Magistrate Judge Thynge:

In accordance with the Order dated May 11, 2005, we have enclosed herewith, for an **in camera** review, the following confidential medical records **which are being provided under seal**:

1. Documents from Meadowwood Hospital, bate stamped Nos. MH0001 to MH0083.

2. Documents from Rockford Center, bate stamped RC0001 to RC0096.

We have not been provided with the documents from Father Martin's Ashley. Shortly after service of the Subpoena upon Father Martin Ashley, we were contacted by that facility, who advised that the Subpoena that the Defendant served on it (a) did not comply with Maryland's Statute governing the release of confidential medical records, MD ADC 13A.11.06.11; and (b) there was no indication in the Order that the provisions of 42 U.S.C. S 290dd-2 were complied with in the Order and Subpoena that it received. Indeed, Defendants did not provide any of the treatment facilities with notice of the Defendant's application for disclosure of the records, and indeed, no motion was even filed by Defendant. Nor did Defendant provide any competent proofs that demonstrate that there was "good cause" to order production

## Over a Century of Solutions

626202

Philadelphia   Harrisburg      Pittsburgh       Cherry Hill     Vineland        Wilmington
Pennsylvania   Pennsylvania    Pennsylvania     New Jersey      New Jersey      Delaware

OBERMAYER REBMANN MAXWELL & HIPPEL

The Honorable Mary Pat Thynge, U.S.M.J.
United States District Court
June 1, 2005
Page 2

of the documents. We understand that counsel for Father Martin Ashley is presently reviewing the subpoena and the accompanying Order.

In the meantime, we again object to the production of any of the enclosed medical records to Defendant, on the basis that there is no "good cause" for disclosure under either Fed. R. Civ. Pro. 26(a), since they were never provided to the Plaintiff's treating physician, Dr. Jackovic or to Plaintiff's expert, Dr. Kaye; and (b) they are privileged and protected from disclosure by Title 42 U.S.C. § 290dd-2(a). Under that Federal Statute, disclosure of the confidential treatment records is authorized only: 1) when the patient consents; 2) to medical personnel to the extent necessary to meet a bona fide medical emergency; 3) to qualified personnel for the purpose of conducting scientific research, management audits, financial audits, or program evaluation, but such personnel may not identify, directly or indirectly, any individual in any report if such research, audit, or evaluation, or otherwise disclose patient identities in any manner; and 4) if authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefore, including the need to avert a substantial risk of death or serious bodily harm. 42 U.S.C. S 290dd-2(b).

In the latter instance, the court must make a finding of good cause before ordering disclosure. Section 290dd-2(b)(2)(C). In assessing good cause, the court is directed to weigh the public interest and the need for disclosure against the injury to the patient, the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure. Section 290dd-2(b)(2)(C). The regulations go on to provide that "[a] court order under these regulations may authorize disclosure of confidential communications made by the patient to a program in the course of diagnosis, treatment, or referral for treatment only if" one of three conditions is met: (1) a threat to life or limb, or of child abuse; (2) prosecution of "an extremely serious crime" such as homicide, rape, or assault; or (3) litigation "in which the patient offers testimony or other evidence pertaining to the content of the confidential communications." 42 C.F.R. § 2.13(a), § 2.63(a)(1), (2), (3). Finally the regulations define "records" as "any information, whether recorded or not, relating to a patient" that was received or acquired by the facility in the course of treatment. Id. § 2.12.

Here, Defendants have not demonstrated good cause, as required by Section 290dd-2(b)(2)(C), for the production of any of the documents from any of the three treating facilities. Prior to the time that the Defendant made its formal application for release of the confidential treatment records, it had deposed the Plaintiff, her treating physician, Dr. Jackovic and her psychiatric expert, Dr. Kaye, during which the Defendant explored the Plaintiff's medical conditions for ten years prior to her termination, at the time of her termination, and for the two year period following her termination. Defendant was also provided with the confidential medical records that had been provided to Dr. Kaye and Dr. Jackovic that concern the Plaintiff's

626202

OBERMAYER REBMANN MAXWELL & HIPPEL

The Honorable Mary Pat Thynge, U.S.M.J.
United States District Court
June 1, 2005
Page 3

current medical condition before it informally requested that the confidential medical records from the facilities where Plaintiff recently obtained treatment be disclosed. Thus, the Defendant had in its possession all the documentation that was needed to obtain an expert opinion on relevance, to provide the required "good cause" for production under the Federal Statute. Yet, Defendants did not produce any qualified opinions, and rather, its counsel simply stated that it hopes that something in those documents may somehow be relevant to this action. That unsupported allegation does not satisfy the strict requirements for disclosure of confidential treating documents under 42 U.S.C. § 290dd-2(b)(2)(C).

Defendants' strategy, of attempting to obtain Plaintiff's medical records from May 2004 forward, so that it can obtain retrospective expert testimony as to the Plaintiff's medical condition at the time her employment was terminated by Defendant, in March 2002, has long been rejected as speculative. See Goomar v. Centennial Life Ins. Co., 855 F.Supp. 319, 326-327, (S.D. Cal. 1994), aff'd 76 F3d. 1059 (9th Cir. 1996); Benchmaster, Inc. v. Kawaelde, 107 F.R.D. 752 (E.D.Mich.1985). Indeed, it has long been recognized that retrospective expert testimony regarding the existence or onset of a mental illness is inadmissible speculation. Id; See also Coca-Cola Bottling Co. v. Torres, 255 F.2d 149 (1st Cir.1958); Bruce v. Estelle, 536 F.2d 1051, 1057 (5th Cir.1976), cert. denied, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1976); Conner v. Wingo, 429 F.2d 630, 637 (6th Cir.1970), cert. denied, 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 121 (1972).

In Goomar v. Centennial Life Ins. Co., 855 F.Supp. at 326-327, the Court barred two experts from providing their opinions that the Plaintiff suffered from a psychotic condition in 1984, when it was undisputed that Plaintiff did not seek medical care for that condition until September 1989; no medical records existed which showed the existence of a psychotic condition prior to that date. The court found that in order for the expert's opinions to be admissible, the expert's 'knowledge', must be based on more than subjective belief or unsupported speculation." Id. The court found that the expert's retrospective analysis of the Plaintiff's emotional condition in 1984, which was based on medical records from 1989 and the Plaintiff's own testimony, that was provided years later, constituted unsupported speculation, and thus, was properly excluded.

Likewise, in Benchmaster, the Plaintiff alleged that Defendants had extorted money from him between 1972 and 1982 by overcoming his will. The Defendants filed a motion to compel the Plaintiff to submit to a mental examination to determine whether, in fact, the Plaintiff's will was overcome during the ten-year period. The magistrate denied the motion, finding that the results of such an examination would probably be inadmissible at trial. Benchmaster, 107 F.R.D. at 753. On appeal the district court affirmed the magistrate's decision, finding that a psychiatrist's opinion regarding the Plaintiff's mental state ten years earlier would be inadmissible speculation. The court stated: "[A] psychiatrist would not be able to assist the fact finder in determining whether a person suffered, rather than suffers from, an emotional distress

626202

**OBERMAYER REBMANN MAXWELL & HIPPEL**

The Honorable Mary Pat Thynge, U.S.M.J.
United States District Court
June 1, 2005
Page 4

or disturbance and, if so, the cause of that emotional suffering." Id. at 754. The Benchmaster Court therefore concluded that psychiatric testimony concerning the Plaintiff's emotional state during the years 1972 through 1982 would be speculative. The court found that the requested psychiatric examination would provide relevant information only as to the Plaintiff's current psychiatric condition. Id.

As in Benchmaster, the Defendant's proclaimed "need" for the confidential medical records from a hospitalization that took place in late 2004 to early 2005, so that they can have an expert perform a retrospective evaluation of the Plaintiff's mental condition in March 2002, at the time of her termination, would be based on speculation. As in Goomar v. Centennial Life Ins. Co., no medical records exist which show the existence of the subject medical condition prior to the time that Plaintiff was discharged her from her employment in March 2002. Plaintiff's expert found, based on the medical records that were produced, that the psychiatric condition that Plaintiff suffered from as a result of her termination was short lived, and that by approximately September 2002, the symptoms had improved to the point where the diagnosis could no longer be supported. After that date, the Plaintiff suffered the "garden variety" type of emotional distress that is associated with the discriminatory and retaliatory actions of the Defendant. Plaintiff's expert has opined that the subject medical condition that arose in May 2004, was not caused by her employment termination in March 2002. Defendant has not produced any competent evidence to refute that opinion.

Thus, Defendants have failed to make any evidentiary showing that demonstrates that "good cause" exists under 42 U.S.C. § 290dd-2(b)(2)(C) to authorize Defendants to obtain any the confidential medical records concerning the Plaintiff's treatments at the facilities, from May, 2004 to present. Defendants' counsel's proclaimed assertion that the Plaintiff's current mental status may somehow be relevant to the issues in this case is not supported by any facts, or any expert opinion, and is based solely on speculation. Thus, 42 U.S.C. § 290dd-2(b)(2) precludes the disclosure of any of the confidential medical records to Defendants. It is respectfully requested that none of the requested documents be released to Defendants in this case.

Thank you for Your Honor's attention to this matter.

Respectfully yours,

/s/
KIMBERLY D. SUTTON (KS8229)

KDS/pjs
Enclosures
c:   Laurence V. Cronin, Esquire (w/o Encls.)
     Andrea L. Spoltore (w/o Encls.)

626202